UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBIN CHRYSTAL HALE and KAITLYN PIRTLE, individually and on behalf of all others similarly situated | |
| | No. |
| Plaintiffs, | |
| | **JURY TRIAL DEMANDED** |
| v. | |
| WALGREEN CO.; GNC HOLDINGS, INC.; TARGET CORPORATION; and WAL-MART STORES, INC., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Robin Chrystal Hale and Kaitlyn Pirtle ("Plaintiffs"), individually and on behalf of a class of all those similarly situated, upon personal knowledge as to facts pertaining to Plaintiffs and upon information and belief as to all other matters, based on the investigation of their counsel, against Defendant Walgreen Co. ("Walgreens"), GNC Holdings, Inc. ("GNC"), Target Corporation ("Target"), and Wal-Mart Stores, Inc. ("Wal-Mart") (collectively "Defendants"), state as follows:

### I.       NATURE OF THE ACTION

1.       When a retailer represents to the public that its nutritional supplements contain certain ingredients, the retailer's supplements should contain those ingredients. This case arises from the Defendants' repeated and systematic violation of this basic rule, by representing to the consuming public that their store-brand herbal supplements contained certain primary ingredients, when, as we know now, they failed to contain such ingredients. Not only did the

- 1 -

Defendants' herbal supplements fail to contain the ingredients they were represented to contain, they contained a variety of other materials that were not disclosed by the Defendants, thus, putting the health of their customers at risk.

2.      Herbal supplements are dietary supplements that are believed to possess certain therapeutic or other health benefits. These supplements are derived from natural plants, flowers, roots and the like, and come in many different dosages and forms, such as capsules or liquid. The names of some herbal supplements, like Echinacea or Garlic, are quite familiar to most people. While others, such as Bilberry, may not be.[1] The Defendants manufacture and sell a variety of Herbal Supplements under their own private labels.

3.      On February 2, 2015, the New York Attorney General ("NYAG") sent Cease and Desist Letters to the CEO's of the Defendants, demanding they stop selling certain store brand Herbal Supplements that fail to contain the ingredients that the Defendants represent are contained in the Herbal Supplements, or, that contain other substances which are not disclosed on the packaging for those Herbal Supplements.

4.      In particular, the NYAG stated that it obtained random samples from the Defendants' store-brand nutritional supplements (*i.e.* Ginkgo Biloba, St. John's Wort, Garlic) from several different locations of each Defendant. The NYAG then conducted specific genetic testing on each of the samples and, incredibly, found that the overwhelming majority of Herbal Supplements tested failed to contain *any* of the primary ingredients they were represented to contain, and in many cases, contained ingredients that do not match what is on the label.

---

[1]      For purposes of this complaint, the term "Herbal Supplements" shall include the following Defendants' store brand supplements: Aloe Vera, Bilberry, Black Cohosh, Cat's Claw, Chasteberry, Cranberry, Dandelion, Echinacea, Ephedra, Evening Primrose Oil, Feverfew, Flaxseed/Flaxseed Oil, Garlic, Ginger, Ginkgo (Ginkgo Biloba), Ginseng, Goldenseal, Green Tea, Hawthorn, Horse Chestnut, Kava, Licorice Root, Milk Thistle, Mistletoe, Red Clover, Saw Palmetto, St. John's Wort, and Valerian. *See* http://www.nutrition.gov/dietary-supplements/herbal-supplements.

5.     On behalf of themselves and all others similarly situated, Plaintiffs seek relief from the Defendants for injuries caused by their common practice, including: (a) an order certifying the action to be maintained as a Class action and ordering Plaintiffs and their counsel to represent the Class; (b) restitution; (c) compensatory damages; (d) punitive, statutory, and/or treble damages; (e) attorneys' fees; (f) costs of this suit; (g) pre- and post-judgment interest; and (h) such other and further relief as this Court may deem necessary or proper.

## II.     JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, because the proposed Class consists of 100 or more members, and minimal diversity exists.

7.     This Court has personal jurisdiction over the Defendants because they are authorized to do business and in fact do business in this district and have sufficient minimum contacts with this district, and/or each Defendant otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of its Herbal Supplements in this district, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Illinois because one of the Defendants, Walgreens, is located in this District, and a substantial part of the events underlying Plaintiffs' claims occurred in this District.

## III.    THE PARTIES

### A.    The Plaintiffs

9.      Plaintiff Robin Chrystal Hale is an individual residing in Des Moines, Iowa. Plaintiff purchased St. John's Wort from the Defendants during the Class Period. Plaintiff incurred losses and/or damages as a result of the activities alleged herein. Plaintiff and/or their property and/or estate were injured as a result of the conduct alleged herein. Plaintiff has suffered injury-in-fact for which she is entitled to seek monetary damages.

10.      Plaintiff Kaitlyn Pirtle is an individual residing in Ames, Iowa.  Plaintiff purchased Echinacea, St. John's Wort and Valerian Root from the Defendants during the Class Period. Plaintiff incurred losses and/or damages as a result of the activities alleged herein. Plaintiff and/or their property and/or estate were injured as a result of the conduct alleged herein. Plaintiff has suffered injury-in-fact for which she is entitled to seek monetary damages.

### B.    The Defendants

11.      Defendant Walgreen Co. is an Illinois corporation with its principal place of business at 108 Wilmott Road, Deerfield, Illinois. Walgreens owns and operates approximately 8300 stores throughout the United States.[2] Defendant Walgreens manufactures and sells its own line of Herbal Supplements under the brand name "Finest Nutrition." Defendant Walgreens has been and still is engaged in the business of manufacturing and selling Herbal Supplements in the United States.

12.      Defendant Target Corporation is a Minnesota corporation with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota. As of February 2014, Target owned

---

[2]      Walgreens Co. Form 10-K for the period ending August 31, 2014, at p. 24.

and operated approximately 1800 retail stores throughout the United States.[3] Defendant Target manufactures and sells its own line of Herbal Supplements under the brand name "up & up." Defendant Target has been and still is engaged in the business of manufacturing and selling Herbal Supplements in the United States.

13.     Defendant GNC Holdings, Inc. is a Delaware Corporation with its principal place of business at 300 Sixth Avenue, Pittsburgh, Pennsylvania. GNC boasts that it "is the leading global specialty retailer of health and wellness products, including vitamins, minerals and herbal supplement products."[4] GNC has over 8500 locations as well as its website, where it sells its products, including Herbal Supplements.[5] Defendant GNC manufactures and sells its own line of Nutritional Supplements under a single brand name of "Herbal Plus." GNC's Herbal Supplements are available in various dosages, and in different forms such as soft gelatin capsule form, liquid or tea form. Defendant GNC has been and still is engaged in the business of manufacturing and selling Herbal Supplements in the United States.

14.     Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas. Defendant Wal-Mart manufactures and sells its own line of Herbal Supplements under the brand name "Spring Valley." Defendant Wal-Mart has been and still is engaged in the business of manufacturing and selling Herbal Supplements in the United States.

---

[3]     Target Corporation Form 10-K for the period ending February 1, 2014, at p. 11.

[4]     GNC Holdings, Inc. Form 10-K for the period ending December 31, 2013, at p. 4.

[5]     *Id.*

## IV. Herbal Supplements

### A. Background on Herbal Supplements

15. Herbal Supplements, also known as "botanicals," are one of the most commonly consumed nutritional supplements in the United States. Herbal Supplements are a type of dietary supplement that contains herbs plant or part of a plant used for its flavor, scent, or potential therapeutic properties or other health benefits. Herbal Supplements may include flowers, leaves, bark, fruit, seeds, stems, and roots, either on their own, or in mixtures. Primitive and ancient civilizations relied on herbs for healing, as do many contemporary cultures throughout the world. In fact, the World Health Organization has estimated that 80% of the world's population continues to use traditional therapies, a major part of which are derived from plants.[6]

16. As of 2013, it is estimated that approximately 36 million adults in the United States consume Herbal Supplements.[7] This figure represents an increase in consumption of over 33% since 2011.[8] Herbal supplement sales in the United States in 2013 were estimated to be $6 billion.[9] It is also estimated that the global herbal supplements market is a $100 billion annual market.[10]

---

[6] http://www.helpguide.org/articles/healthy-eating/dietary-supplements.htm.

[7] http://www.nutraingredients-usa.com/Markets/Future-looks-increasingly-bright-for-herbal-supplements-market-researcher-says.

[8] *Id.*

[9] http://cms.herbalgram.org/press/2014/2013_Herb_Market_Report.html?ts=1423064157&signature=c178d1d1f 807b7078647474baea0e9c9.

[10] http://www.nutraingredients-usa.com/Markets/Herbal-supplement-sales-to-hit-93.15-billion-by-2015-Report.

17.     There are at least 50 different types of Herbal Supplements manufactured and sold in the United States. These include Aloe Vera, Astragalus, Cranberry, Echinacea, Garlic, Ginseng, Ginkgo, Milk Thistle, St. John's Wort, and Yohimbe.[11]

18.     Herbal Supplements are not regulated by the United States Food and Drug Administration. Pursuant to the Dietary Supplement Health and Education Act of 1994, Herbal Supplements are considered "dietary supplements" and therefore come outside the purview of the FDA. In other words, virtually anyone with the ability to manufacture, market and sell Herbal Supplements can do so, with no oversight from the FDA.

**B.     The New York Attorney General's Investigation of Defendants**

19.     The New York Attorney General has been conducting an investigation into the Herbal Supplements industry. As a result of that investigation, on February 2, 2015, the New York AG sent "Cease and Desist" letters to the Defendants, demanding that they remove certain of their store-brand Herbal Supplements from their shelves and otherwise cease selling such products.

**1.     <u>Cease and Desist Letter to GNC</u>**

20.     In the February 2 letter to GNC's CEO, Michael Archbold, the NY AG stated that it purchased six Herbal Plus Herbal Supplements from four different New York state GNC locations.  The Herbal Supplements purchased were Ginkgo Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto. The NY AG then conducted genetic testing on each bottle, which yielded 120 results.

21.     In testing the samples, the NY AG used "DNA barcoding technology." DNA barcoding technology is a highly reliable means of testing the genetic composition of herbal

---

[11]     http://ods.od.nih.gov/factsheets/list-Botanicals/.

supplements.  Barcoding uses state-of-the-art biotechnology to help identify plant material based on short, standardized gene sequences.[12]

22.     The results of the genetic testing showed that 45% of the samples contained *no* plant DNA whatsoever.  Further, 33% of the samples contained botanical material other than what appeared on the label. And finally, a mere 22% of the sample set yielded DNA that matched the contents of the product label.

23.     For example, with respect to the Herbal Plus Ginkgo Biloba tested by the NY AG, none of the samples contained any Ginkgo whatsoever, and many of the samples tested showed no presence of any plant material at all. Several of the tests revealed the presence of rice, spruce, and asparagaccae, materials that are not related to Ginkgo. The presence of these ingredients was not disclosed on the Herbal Plus Ginkgo packaging.

24.     With respect to the Herbal Plus St. John's Wort, none of the samples tested contained *any* St. John's Wort. A few of the samples contained other substances such as rice, allium and dracaena (which is a tropical houseplant). The presence of these three ingredients was not disclosed on the Herbal Plus St. John's Wort packaging.

25.     With respect to Echinacea, none of the samples tested by the NY AG contained any Echinacea. Some of the samples contained rice, and pinus or ranunculacae. The presence of these ingredients were not disclosed on the Herbal Plus Echinacea packaging.

26.     Even in cases where the genetic tests on one of the Herbal Plus Herbal Supplements revealed the presence of the correct ingredient, many of the tests revealed the complete absence of the ingredient on the same product, thus, leaving a consumer completely

---

[12]     http://www.biomedcentral.com/1741-7015/11/222.

unsure whether they got "lucky" and purchased one of the bottle's that contained the proper ingredients.

### 2. <u>Cease and Desist Letter to Target</u>

27.     In a February 2, 2015 letter to Target's CEO, Brian Cornell, the NY AG stated that it purchased six 'up & up" Herbal Supplements from three different New York state Target locations. The Herbal Supplements purchased were Ginkgo Biloba, St. John's Wort, Valerian Root, Garlic, Echinacea and Saw Palmetto. The NY AG then conducted genetic testing on each bottle, which yielded 90 results.

28.     The results of the genetic testing showed that 38% of the samples contained *no* plant DNA whatsoever.  Further, 21% of the samples contained botanical material other than what appeared on the label. And finally, a mere 41% of the sample set yielded DNA that matched the contents of the product label.

29.     For example, with respect to the up & up Ginkgo Biloba, none of the samples tested contained *any* Ginkgo. A few of the samples contained other substances such as rice, allium and mung/French Bean. The presence of these three ingredients were not disclosed on the up & up Ginkgo packaging.

30.     With respect to the up & up St. John's Wort tested by the NY AG, *none* of the samples contained any St. John's Wort whatsoever, and many of the samples tested showed no presence of any plant material at all. Several of the tests revealed the presence of rice, allium, and dracaena, all of which are unrelated to St. John's Wort. The presence of these ingredients was not disclosed on the up & up St. John's Wort packaging.

31.     With respect to the up & up Valerian Root tested by the NY AG, *none* of the samples contained any Valerian Root whatsoever, and many of the samples tested showed no

presence of any plant material at all. Several of the tests revealed the presence of allium, phasolus/beans, rice, asparagaccea, peas, wild carrot, saw palmetto, and phaseolus fabacaeae, all of which are unrelated to Valerian Root. The presence of these ingredients was not disclosed on the up & up Valerian Root packaging.

32.     Even in cases where the genetic tests on one of the up & up Herbal Supplements revealed the presence of the correct ingredient, many of the tests revealed the complete absence of the ingredient on the same product, thus, leaving a consumer completely unsure whether they got "lucky" and purchased one of the bottle's that contained the proper ingredients.

### 3.     Cease and Desist Letter to Walgreens

33.     In a February 2, 2015 letter to Walgreens' President, Alexander Gourlay, the NY AG stated that it purchased six Walgreens brand "Finest Nutrition" Herbal Supplements from three different New York state Walgreens locations. The Walgreens Herbal Supplements purchased were Ginkgo Biloba, St. John's Wort, Ginseng, Garlic, Echinacea and Saw Palmetto. The NY AG then conducted genetic testing on each bottle, which yielded 90 results.

34.     The results of the genetic testing showed that 37% of the samples contained *no* plant DNA whatsoever.  Further, 45% of the samples contained botanical material other than what appeared on the label. And finally, a mere 18% of the sample set yielded DNA that actually matched the contents of the product label.

35.     For example, with respect to the Finest Nutrition Ginkgo Biloba, none of the samples tested contained *any* Ginkgo. The only botanic material that was found in the Ginkgo samples was rice. The presence of the rice was not disclosed on the Finest Nutrition packaging.

36.     With respect to the Finest Nutrition St. John's Wort tested by the NY AG, *none* of the samples contained any St. John's Wort whatsoever, and many of the samples tested showed

no presence of any plant material at all. Several of the tests revealed the presence of rice, allium, and dracaena, all of which are unrelated to St. John's Wort. The presence of these ingredients was not disclosed on the Finest Nutrition St. John's Wort packaging.

37.     With respect to the Finest Nutrition Echinacea tested by the NY AG, *none* of the samples contained any Echinacea whatsoever, and many of the samples tested showed no presence of any plant material at all. Several of the tests revealed the presence of allium, oryza, and daisy, all of which are unrelated to Echinacea. The presence of these ingredients was not disclosed on the Finest Nutrition Echinacea packaging.

38.     Even in cases where the genetic tests on one of the Finest Nutrition Herbal Supplements revealed the presence of the correct ingredient, many of the tests revealed the complete absence of the ingredient on the same product, thus, leaving a consumer completely unsure whether they got "lucky" and purchased one of the bottle's that contained the proper ingredients.

**4.      Cease and Desist Letter to Wal-Mart**

39.     In a February 2, 2015 letter to Wal-Mart's President and CEO, Doug McMillon, the NY AG stated that it purchased six Wal-Mart brand "Spring Valley" Herbal Supplements from three different New York state Wal-Mart locations. The Spring Valley Herbal Supplements purchased were Ginkgo Biloba, St. John's Wort, Ginseng, Garlic, Echinacea and Saw Palmetto. The NY AG then conducted genetic testing on each bottle, which yielded 90 results.

40.     The results of the genetic testing showed that 56% of the samples contained *no* plant DNA whatsoever.  Further, 40% of the samples contained botanical material other than what appeared on the label. And finally, **a mere 4%** of the sample set yielded DNA that actually matched the contents of the product label.

41.     For example, with respect to the Spring Valley Ginkgo Biloba, none of the samples tested contained *any* Ginkgo. Some samples revealed the presence of rice, dracaena, mustard, wheat and radish. The presence of these ingredients was not disclosed on the Spring Valley packaging.

42.     With respect to the Spring Valley St. John's Wort tested by the NY AG, *none* of the samples contained any St. John's Wort whatsoever, and many of the samples tested showed no presence of any plant material at all. Several of the tests revealed the presence of rice, allium, and cassava, all of which are unrelated to St. John's Wort. The presence of these ingredients was not disclosed on the Spring Valley St. John's Wort packaging.

43.     With respect to the Spring Valley Echinacea tested by the NY AG, *none* of the samples contained any Echinacea whatsoever, and none of the samples contained any botanical material of any kind.

44.     Even in cases where the genetic tests on one of the Spring Valley Herbal Supplements revealed the presence of the correct ingredient, many of the tests revealed the complete absence of the ingredient on the same product, thus, leaving a consumer completely unsure whether they got "lucky" and purchased one of the bottle's that contained the proper ingredients.

## V.     CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this action pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the members of the following Class:

> All persons and entities that purchased GNC "Herbal Plus," Target "Up & Up," Walgreens "Finest Nutrition," and Wal-Mart "Spring-Valley" brand herbal nutritional supplements during the period February 2, 2009 through the present ("Class Period").

46.     Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in a Defendant, and Defendants' legal representatives, predecessors, successors, assigns, and employees, as well as governmental entities.

47.     The definition of the Class is unambiguous. Plaintiffs are members of the Class they seek to represent. Members of the Class can be identified using Defendants' records and other information that is kept by Defendants in the usual course of business and/or in the control of Defendants. Records kept by the Defendants identify the Class members who purchased the Herbal Supplements. The members of the Class can be notified of the Class action through publication and direct mailings to address lists maintained in the usual course of business by Defendants.

48.     Pursuant to Rule 23(a)(1), Class members are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiffs, but that number greatly exceeds the number to make joinder impossible.

49.     Pursuant to Rule 23(a)(2) and (b)(3), questions of fact and law, except as to the amount of damages each member of the Class sustained, are common to the Class. Common questions of law and fact predominate over the questions affecting only individual Class members. Some of the common legal and factual questions include:

(a)     Whether Defendants manufactured and/or sold the Herbal Supplements which failed to contain the ingredients advertised;

(b)     Whether Defendants manufactured and/or sold the Herbal Supplements which contained ingredients not disclosed on the packaging;

(c)     Whether Defendants' conduct violated the consumer fraud laws of various states;

(d)     Whether Defendants were unjustly enriched by selling the Herbal Supplements that failed to contain the primary ingredients advertised;

(e)     Whether Defendants defrauded Plaintiffs and members of the Class; and

(f)     The nature and extent of damages and other remedies to which the conduct of Defendants entitles Plaintiffs and the Class members.

50.     Each Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs and the Class members. Individual questions, if any, pale by comparison to the numerous common questions that dominate.

51.     The injuries sustained by the Class members flow, in each instance, from a common nucleus of operative facts - each Defendants' misconduct. Each Class purchased an Herbal Supplement that failed to contain the primary ingredient listed on the label.

52.     Pursuant to Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs, like other members of the Class, purchased an Herbal Supplement that failed to contain the primary ingredients that such supplements were supposed to contain. Plaintiffs were subject to, and was financially harmed by, a common policy and practice applied by each Defendant to all Class members.

53.     Pursuant to Rule 23(a)(4) and (g)(1), Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are familiar with the basic facts that form the bases of the Class members' claims. Plaintiffs' interests do not conflict with the interests of the other Class members that they seek to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously.

54.     Pursuant to Rules 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would

impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

55.     Individual litigation of the legal and factual issues raised by the conduct of the Defendants would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.

## VI.     TOLLING OF STATUTE OF LIMITATIONS

56.     Any applicable statute of limitations has been tolled by the Defendants' knowing and active concealment of its deceptive practices. Plaintiffs and members of the Class could not have reasonably discovered the true extent of the Defendants' deception with regard to their Herbal Supplements, until the New York Attorney General disclosed the results of its studies on the Defendants' Herbal Supplements.

57.     As a result of the active concealment by the Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## COUNT I

### VIOLATIONS OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT. § 45.50.471, *et seq.*)

58.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

59.     Alaska's Unfair Trade Practices And Consumer Protection Act ("AUTPCPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of

trade or commerce unlawful, including: "(8) advertising goods or services with intent not to sell them as advertised"; "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged"; and "(14) representing that an agreement confers or involves rights, remedies, or obligations which it does not confer or involve, or which are prohibited by law." ALASKA STAT. § 45.50.471.

60.     In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that their Herbal Supplements failed to contain the primary ingredient they represented were contained in their Herbal Supplements and/or contained ingredients that were not disclosed on the packaging of the Herbal Supplement. Accordingly, the Defendants engaged in unlawful trade practices, including misrepresenting the ingredients contained in the Herbal Supplements; and omitting material facts in describing their Herbal Supplements.

61.     Defendants' misrepresentations and omissions described herein have the capacity or tendency to deceive. As a result of these unlawful trade practices, Plaintiffs and members of the Class have suffered ascertainable loss.

62.     Plaintiffs and the Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants'

Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

63.     Plaintiffs are entitled to recover the greater of three times the actual damages or $500, pursuant to ALASKA STAT. § 45.50.531(a). Attorneys' fees may also be awarded to the prevailing party pursuant to ALASKA STAT. § 45.50.531(g).

## COUNT II

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### (ARIZ. REV. STAT. § 44-1521, *et seq.*)

64.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

65.     Plaintiffs, members of the Class and Defendant are each "persons" as defined by ARIZ. REV. STAT. § 44-1521(6). The Herbal Supplements sold to Plaintiffs and the Class are "merchandise" as defined by ARIZ. REV. STAT. § 44-1521(5).

66.     The Arizona Consumer Fraud Act proscribes "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." ARIZ. REV. STAT. § 44-1522(A).

67.     In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that their Herbal Supplements failed to contain the primary ingredient they represented were contained in their Herbal Supplements and/or contained ingredients that were not disclosed on the packaging of the Herbal Supplement. Accordingly, the

Defendants engaged in unlawful trade practices, including misrepresenting the ingredients contained in the Herbal Supplements; and omitting material facts in describing their Herbal Supplements. By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by the Arizona Consumer Fraud Act, ARIZ. REV. STAT. § 44-1522(A). The Defendants' material omissions and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements.

68.     The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

69.     Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the Arizona Consumer Fraud Act.

70.     Plaintiffs also seek court costs and attorneys' fees as a result of Defendants' violation of the Arizona Consumer Fraud Act as provided in ARIZ. REV. STAT. § 12-341.01.

## COUNT III

## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT
### (ARK. CODE ANN. § 4-88-101 *et seq.*)

71.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

72.     Plaintiffs, members of the Class and Defendant are each "persons" as defined by ARK. CODE ANN. § 4-88-102(5). The Herbal Supplements the Defendants sold to Plaintiffs and the Class are "Goods" as defined by ARK. CODE ANN. § 4-88-102(4).

73.     The Arkansas Deceptive Trade Practices Act proscribes "[d]eceptive and unconscionable trade practices," and "[t]he act, use or employment by any person of any deception, fraud or false pretense" or the "concealment, suppression or omission of any material fact with intent that others rely upon the concealment, suppression or omission" when done "in connection with the sale or advertisement of any goods …." ARK. CODE ANN. §§ 4-88-107, 108.

74.     In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that their Herbal Supplements failed to contain the primary ingredient they represented were contained in their Herbal Supplements and/or contained ingredients that were not disclosed on the packaging of the Herbal Supplement. Accordingly, the Defendants engaged in unlawful trade practices, including misrepresenting the ingredients contained in the Herbal Supplements; and omitting material facts in describing their Herbal Supplements. By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by the Arkansas Deceptive Trade Practices Act, ARK. CODE ANN. § 4-88-101, *et seq*. The Defendants' material omissions and misrepresentations were

made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements.

75.     The Defendants unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

76.     Plaintiffs and the Class sustained actual damages or injury as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the Arkansas Deceptive Trade Practices Act.

77.     Plaintiffs also seek court costs and attorneys' fees as a result of the Defendants' violation of the Arkansas Deceptive Trade Practices Act as provided in ARK. CODE ANN. § 4-88-113(f).

## COUNT IV

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

78.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

79.     The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL BUS. & PROF. CODE § 17200.

80. The Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by their conduct, statements, and omissions described above.

81. The acts engaged in by the Defendants are fraudulent and show a pattern of untruthful statements, false representations, concealment, intent to mislead, and a conspiracy to defraud that were all part of a scheme to mislead.

82. These acts and practices have deceived Plaintiffs and are likely to deceive the public. The Defendants' violations of the UCL caused injuries to Plaintiffs and Class members.

83. The injuries suffered by Plaintiffs and Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition. Nor are they injuries that Plaintiffs and Class members should have or could have reasonably avoided.

84. The Defendants' representations and acts as set out above induced Plaintiffs and others similarly situated to purchase the Herbal Supplements. Plaintiffs reserve the right to identify additional violations by the Defendants as may be established through discovery.

85. As a direct and legal result of its unlawful, unfair, and fraudulent conduct described above, the Defendants have been unjustly enriched. Specifically, the Defendants have been unjustly enriched by the receipt of large sums of ill-gotten gains from the deceptive and excessive monthly charges they have levied on customers.

86. Pursuant to California Business and Professions Code section 17203, Plaintiffs seek an order of this Court:

a. Compelling the Defendants to make restitution to the general public for all funds unlawfully, unfairly, or fraudulently obtained by the Defendants as a result of their violations of California Business and Professions Code section 17200 *et seq*.; and

- 21 -

b.      Declaring that the Defendants have violated the provisions of California

Business & Professions Code section 17200, and California Business and Professions Code

section 17500, and any other statutory violations.

87.     In prosecuting this action for the enforcement of important rights affecting the

public interest, Plaintiffs seek to recover attorney fees under (i) section 1021.5 of the Code of

Civil Procedure and/or (ii) the "common fund" doctrine available to a prevailing plaintiff who

wins restitutionary relief for the general public.

## COUNT V

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)

88.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

though fully set forth herein.

89.     California Bus. & Prof. Code § 17500 states: ""It is unlawful for any …

corporation … with intent directly or indirectly to dispose of real or personal property … to

induce the public to enter into any obligation relating thereto, to make or disseminate or cause to

be made or disseminated … from this state before the public in any state, in any newspaper or

other publication, or any advertising device, … or in any other manner or means whatever,

including over the Internet, any statement … which is untrue or misleading, and which is known,

or which by the exercise of reasonable care should be known, to be untrue or misleading."

90.     The Defendants caused to be made or disseminated through California and the

United States, through advertising, marketing and other publications, statements that were untrue

or misleading, and which were known, or which by the exercise of reasonable care should have

been known to the Defendants, to be untrue and misleading to Plaintiffs and the other Class

members.

91.     The Defendants have violated § 17500 because its misrepresentations and omissions regarding the contents of the Herbal Supplements were material and likely to deceive a reasonable consumer.

92.     Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of the Defendants unfair, unlawful, and/or deceptive practices.  In choosing to purchase the Herbal Supplements, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of the Defendants with respect to the content of the Herbal Supplements. Had Plaintiffs and the other Class members known the true facts, they would not have purchased the Herbal Supplements from the Defendants. Accordingly, Plaintiffs and the other Class members overpaid and did not receive the benefit of their bargain.

93.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Defendants' business. The Defendants' wrongful conduct is part of a pattern or generalized course of conduct that was perpetuated and repeated, both in the State of California and nationwide.

## COUNT VI

### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
### (COLO. REV. STAT. § 6-1-101, *et seq.*)

94.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

95.     Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes making "false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions." COLO. REV. STAT. § 6-1-105(1)(b), (e). The CCPA further

prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," and "advertis[ing] goods … with intent not to sell them as advertised," and failing "to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." COLO. REV. STAT. § 6-1-105(1)(l), (u).

96.     The Defendants are "persons" within the meaning of COLO. REV. STAT. § 6-1-102(6).

97.     In the course of the Defendants' business, they made false and misleading statements concerning the content of the Herbal Supplements. The Defendants also willfully misrepresented, failed to disclose, and actively concealed material information concerning the content of the Herbal Supplements they sold, and otherwise engaged in conduct likely to deceive. Accordingly, the Defendants engaged in unlawful trade practices prohibited by the Colorado Consumer Protection Act.

98.     The Defendants' actions as set forth above occurred in the conduct of trade or commerce.

99.     The Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members. The Defendants' material misstatements and omissions were intended to, and had the capacity to deceive consumers, to attract consumer's to the Defendants' Herbal Supplements, and to induce a party to act or refrain from acting.  Plaintiffs were induced to act or refrain from acting by the Defendants' false and misleading statements and omissions. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were

represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

100.    Plaintiffs and the Class members were injured as a result of the Defendants' conduct in that Plaintiffs and the Class overpaid for the Herbal Supplements and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of the Defendants' misrepresentations and omissions

## COUNT VII

## VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (Conn. Gen. Stat. Ann. § 42-110A, *et seq.*)

101.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

102.    Plaintiffs and Defendant are "persons" as defined by CONN. GEN. STAT. ANN. § 42-110a(3).

103.    The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. CONN. GEN. STAT. ANN. § 42-110b(a). The CUTPA further provides a private right of action under CONN. GEN. STAT. ANN. § 42-110g(a).

104.    In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that their Herbal Supplements failed to contain the primary ingredient they represented were contained in their Herbal Supplements and/or contained ingredients that were not disclosed on the packaging of the Herbal Supplement. Accordingly, the Defendants engaged in unlawful trade practices, including misrepresenting the ingredients

contained in the Herbal Supplements; and omitting material facts in describing their Herbal

Supplements. By concealing and omitting material information from Plaintiffs and the Class and

by making affirmative misrepresentations as described above, the Defendants engaged in

deceptive business practices prohibited by the CUTPA. The Defendants' material omissions and

misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them,

and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements.

105.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs. Buyers such as Plaintiffs and members of the

Class would have acted differently knowing that the Defendants were selling Herbal

Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs

and members of the Class would have wanted to know, as would any reasonable person, that the

Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain

and this information would have changed their and any reasonable customer's decision to

purchase the Defendants' Herbal Supplements.

106.    Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful

acts and are, therefore, entitled to damages and other relief as provided under the CUTPA.

107.    Plaintiffs also seek court costs and attorneys' fees as a result of the Defendants'

violation of the CUTPA as provided in CONN. GEN. STAT. ANN. § 42-110g(d). A copy of this

Complaint is being mailed to the Attorney General and the Commissioner of Consumer

Protection of the State of Connecticut in accordance with CONN. GEN. STAT. ANN. § 42-110g(c).

010494-11 757585 V1

## COUNT VIII

### VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT
### (6 DEL. CODE § 2513, *et seq.*)

108.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

109.    The Delaware Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 DEL. CODE § 2513(a).

110.    The Defendants are persons within the meaning of 6 DEL. CODE § 2511(7).

111.    In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that the their Herbal Supplements failed to contain the primary ingredient they represented were contained in their Herbal Supplements and/or contained ingredients that were not disclosed on the packaging of the Herbal Supplement. Accordingly, the Defendants engaged in unlawful trade practices, including misrepresenting the ingredients contained in the Herbal Supplements; and omitting material facts in describing their Herbal Supplements. By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by the Delaware Consumer Fraud Act.

112.    The Defendants material omissions and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements. Buyers such as Plaintiffs and members of

the Class would have acted differently knowing that the Defendants were selling Herbal

Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs

and members of the Class would have wanted to know, as would any reasonable person, that the

Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain

and this information would have changed their and any reasonable customer's decision to

purchase the Defendants' Herbal Supplements.

113.    The Defendants actions as set forth above occurred in the conduct of trade or

commerce.

114.    The Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

115.    Plaintiffs are entitled to recover damages, as well as costs and reasonable attorney

fees as provided by the Delaware Consumer Fraud Act.

## COUNT IX

### VIOLATIONS OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT
### (6 DEL. CODE § 2532, *et seq.*)

116.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

117.    Delaware's Deceptive Trade Practices Act ("DTPA") prohibits a person from

engaging in a "deceptive trade practice," which includes: "(9) Advertis[ing] goods or services

with intent not to sell them as advertised"; "(11) Makes false or misleading statements of fact

concerning the reasons for, existence of, or amounts of, price reductions," or "(12) Engag[ing] in

any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

118.    The Defendants are persons within the meaning of 6 DEL. CODE § 2531(5).

119.    The Defendants willfully failed to disclose and actively concealed material facts

regarding the contents of their Herbal Supplements. Accordingly, the Defendants engaged in

deceptive trade practices, including advertising their Herbal Supplements, with the intent not to sell them as advertised; omitting material facts in describing their Herbal Supplements making false and misleading statements of fact regarding the contents of their Herbal Supplements, and otherwise engaging in conduct which created a likelihood of confusion or misunderstanding.

120.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce.

121.    The Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

122.    Plaintiffs seek injunctive relief and, if awarded damages under Delaware common law or Delaware Consumer Fraud Act, treble damages pursuant to 6 DEL. CODE § 2533(c).

## COUNT X

### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (FLA. STAT. § 501.201, *et seq.*)

123.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

124.    As amended by the Florida Legislature in 2001, a "person" who has suffered a loss as a result of a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") has standing to sue under that statute. *See* FLA. STAT. § 501.211(2). This 2001 amendment replaced the word "consumer" with "person." Plaintiffs and Class members are "persons" within the meaning of the FDUTPA.

125.    As set forth herein, the Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the FDUPTA.

126.    The Defendants' conduct caused Plaintiffs and Class members to suffer actual damages.

## COUNT XI

### VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT
(IDAHO CIV. CODE § 480, *et seq.*)

127.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

128.    Defendants and Plaintiffs are "persons" under IDAHO CIVIL CODE § 48-602(1).

129.    Defendants engaged in unfair methods and practices in the conduct of its trade or commerce in violation of the Idaho Consumer Protection Act ("ICPA"), IDAHO CIV. CODE § 48-603, including "(9) Advertising goods or services with intent not to sell them as advertised," "(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions," "(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer," or "Engaging in any unconscionable method, act or practice in the conduct of trade or commerce."

130.    As set forth herein, the Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the ICPA. The Defendants willfully failed to disclose and actively concealed material facts regarding the contents of the Herbal Supplements they sold. Accordingly, the Defendants engaged in deceptive trade practices and otherwise engaged in conduct which created a likelihood of confusion or misunderstanding.

131.    The Defendants' misleading, false, or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling

Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

132.    As a result of its violations of the ICPA detailed above, the Defendants caused actual damage and ascertainable loss to Plaintiffs.

133.    The Defendants' deliberate, widespread and systematic fraud was so egregious and carried out with such willful and conscious disregard of the rights of their customers that their sales conduct would outrage or offend the public conscience, and is therefore an unconscionable method, act or practice under the ICPA as provided in IDAHO CIVIL CODE § 48-603C.

134.    Plaintiffs seek punitive damages against the Defendants because their violations were repeated and flagrant, conducted over the course of many years, with knowledge of the illegality of the conduct, and therefore warrants the imposition of punitive damages under IDAHO CIVIL CODE § 48-608(1).

135.    Plaintiffs further seek an order enjoining the Defendants' unfair or deceptive acts or practices, punitive damages, costs of Court, attorney's fees under IDAHO CIVIL CODE § 48-608, and any other just and proper relief available under the ICPA.

010494-11  757585 V1

## COUNT XII

### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505/1, *et seq.*, AND ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS § 510/2

136.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

137.     The Defendants engaged in an unfair or deceptive act or practice by selling Herbal Supplements that failed to contain the ingredients they were represented to contain. The Defendants knew this practice was illegal, but nevertheless continued to sell the Herbal Supplements to the Plaintiffs and members of the Class.

138.     The Defendants further engaged in unfair or deceptive acts or practices by knowingly or willfully concealing, suppressing or omitting material facts from Plaintiffs and members of the Class and by making affirmative misrepresentations in order to induce Plaintiffs and members of the Class to purchase the Herbal Supplements. The Defendants' material misstatements and omissions were likely to and did in fact deceive reasonable customers, including Plaintiffs, about the content of the Herbal Supplements sold by the Defendants.

139.     The Defendants' practice offended public policy, was immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

140.     Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have

changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

141.    The Defendants intended that Plaintiffs and members of the Class would rely on their misrepresentations as well as the material facts that they concealed, suppressed and omitted, as described above. Among other things, the Defendants intended that Plaintiffs and members of the Class rely upon their representations that their Herbal Supplements contained the primary ingredient they were advertised to contain, when, in fact, they did not. Plaintiffs and members of the Class relied upon Defendants' fraudulent and misleading statements, concealments, suppressions, and omissions, and as a result paid higher fees than they would have absent the Defendants' wrongful conduct.

142.    The Defendants' conduct is a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2. As a violation of Section 2 of the Illinois Uniform Deceptive Trade Practices Act, the Defendants' conduct is a violation of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2.

143.    The Defendants' unfair or deceptive act or practice occurred in the course of conduct involving trade or commerce, and was directed to the market in general. The complained-of conduct in this case implicates consumer protection concerns.

144.    The Defendants' unfair or deceptive acts or practices proximately caused injury and ascertainable loss to Plaintiffs and members of the Class.

145.    Plaintiffs and the Class are entitled to actual damages, punitive damages, and reasonable attorneys' fees and costs, as well as any other relief the Court deems proper.

010494-11 757585 V1

## COUNT XIII

## VIOLATIONS OF THE PRIVATE RIGHT OF ACTION
## FOR CONSUMER FRAUDS ACT
## (IOWA CODE §§ 714H.1, *ET SEQ.*)

146.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

147.     Defendant is a "person" under Iowa Code § 714H.2(7).

148.     Plaintiffs are "consumers," as defined by Iowa Code § 714H.2(3), who purchased Herbal Supplements from the Defendants.

149.     Defendants participated in unfair or deceptive acts or practices that violated Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), Iowa Code § 714H.1, *et seq.*, as described herein. Defendants are directly liable for these violations of law.

150.     In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that the their Herbal Supplements failed to contain the primary ingredient they represented were contained in their Herbal Supplements and/or contained ingredients that were not disclosed on the packaging of the Herbal Supplement. Accordingly, the Defendants engaged in unlawful trade practices, including misrepresenting the ingredients contained in the Herbal Supplements; and omitting material facts in describing their Herbal Supplements. By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by the Iowa CFA.

151.     As alleged above, Defendants made numerous material statements about the contents of their Herbal Supplements that were either false or misleading. Each of these

statements contributed to the deceptive context of Defendant's unlawful advertising and representations as a whole.

152.     The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the contents of their Herbal Supplements.  Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

153.     As a result of their violations of the Iowa CFA detailed above, the Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.

154.     Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H of the Iowa Code. Because Defendants' conduct was committed willfully, Plaintiffs seek treble damages as provided in Iowa Code § 714H.5(4).

155.     Plaintiffs also seek court costs and attorneys' fees as a result of Defendants' violation of Chapter 714H as provided in Iowa Code § 714H.5(2).

## COUNT XIV

## VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### (MASS. GEN. LAWS CH. 93A, *et seq.*)

156.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

157.     Plaintiffs intend to assert a claim under the Massachusetts Consumer Protection Act ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS CH. 93A, § 2(1). Plaintiffs will make a demand in satisfaction of MASS. GEN. LAWS CH. 93A, § 9(3), and may amend this Complaint to assert claims under the MCPA once the required 30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the MCPA.

## COUNT XV

## VIOLATIONS OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F.68-70)

158.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

159.     Plaintiffs, members of the Class and the Defendants are each "persons" as defined by the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), MINN. STAT. § 325F.68(2). The Herbal Supplements sold by Defendants to Plaintiffs and the Class are "Merchandise" as defined by MINN. STAT. § 325F.68(2).

160.     The MPCFA makes unlawful, "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise,

whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1). The MPCFA further provides that "any person injured by a violation of [the MPCFA] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." MINN. STAT. § 8.31(3a).

161.     The Defendants willfully failed to disclose and actively concealed material facts regarding the contents of their Herbal Supplements. Accordingly, the Defendants engaged in unlawful trade practices, including advertising the contents of their Herbal Supplements, with the intent to sell them without the contents they represented their supplements contain. By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by the MPCFA. The Defendants' material omissions and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements.

162.     The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

163.     Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the MPCFA.

## COUNT XVI

## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT

### (M.S. § 407.20 ET SEQ.)

164.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

165.    The Defendants, by the actions complained of herein have violated the Missouri

Merchandising Practices Act, § 407.020 R.S. Mo. *et seq* ("Missouri CPA") entitling Plaintiffs

and the members of the Class to damages and relief under the Missouri CPA. Buyers such as

Plaintiffs and members of the Class would have acted differently knowing that the Defendants

were selling Herbal Supplements that did not contain the very ingredients they were represented

to contain. Plaintiffs and members of the Class would have wanted to know, as would any

reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients

they were supposed to contain and this information would have changed their and any reasonable

customer's decision to purchase the Defendants' Herbal Supplements.

166.    The Defendants used deception, false pretense, misrepresentation, and omitted

key facts to entice their Herbal Supplements customers to purchase their Herbal Supplements.

167.    The Defendants' conduct as set forth herein occurred in the course of trade or

commerce as defined by the Missouri CPA.

168.    The Defendants' conduct as set forth herein affects the public interest because it

was part of a generalized course of conduct affecting numerous customers throughout the

country.

169.    Plaintiffs and members of the Class inherently relied on the representations the

Defendants made regarding the contents of their Herbal Supplements.

170.    The Defendants' conduct as set forth herein proximately caused injury in fact to

the business or property of Plaintiffs and Class members.

171.    The Defendants are liable to Plaintiffs and the Class members for damages in an

amount to be determined at trial, including attorneys' fees, costs and statutory damages, and

should be enjoined from continuing to engage in these unlawful, deceptive, unreasonable and unlawful practices as alleged herein.

## COUNT XVII

### VIOLATIONS OF THE NEBRASKA CONSUMER PROTECTION ACT
(NEB. REV. STAT. § 87-301, *et seq.*)

172.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

173.    The Nebraska Consumer Protection Act ("NCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

174.    "Trade or commerce" means "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."

175.    The Defendants engaged in unfair methods and practices in the conduct of its trade or commerce in violation of the NCPA, under which a person commits a violation when it "(9) Advertises goods or services with intent not to sell them as advertised or advertises the price in any manner calculated or tending to mislead or in any way deceive a person," "(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions," or "(15) Uses any scheme or device to defraud by means of:  (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises."

176.    As set forth herein, the Defendants engaged in unlawful deceptive trade practices in the conduct of trade or commerce in violation of the NCPA. The Defendants willfully failed to disclose and actively concealed material facts regarding the contents of their Herbal Supplements.

177.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce.

178. The Defendants' actions impact the public interest because Plaintiffs were deceived, misled, and injured in exactly the same way as thousands of other of the Defendants' Herbal Supplements customers, and because the cost of Herbal Supplements and the contents such supplements, impacts the cost of healthcare, and the public interest in maintaining affordable access to health services. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Defendants' business.

179. Plaintiffs and the Class were injured in their business or property as a result of Defendants' conduct.

180. The Defendants' conduct proximately caused the injuries to Plaintiffs and the Class, who are entitled to recover actual damages, as well as enhanced damages pursuant to § 59-1609.

## COUNT XVIII

### VIOLATIONS OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
### (N.H. REV. STAT. § 358-A:1, *et seq.*)

181. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

182. The New Hampshire Consumer Protection Act ("NHCPA") prohibits "any unfair or deceptive act or practice in the conduct of any trade or commerce."

183. "Trade or commerce" includes "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state."

184. The Defendants engaged in unfair methods and practices in the conduct of its trade or commerce in violation of the NHCPA, including the following prohibited conduct:

"(IX) Advertising goods or services with intent not to sell them as advertised," and "(XI) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."

185.     As set forth herein, the Defendants willfully failed to disclose and actively concealed material facts regarding the contents of their Herbal Supplements. Accordingly, the Defendants engaged in unlawful trade practices, including advertising the contents of their Herbal Supplements, with the intent to sell them without the contents they represented their supplements contain.

186.     The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and were committed willfully or knowingly.

187.     The Defendants' conduct proximately caused damage to Plaintiffs and the Class. Plaintiffs and the Class seek the recovery of actual damages, costs and attorney's fees pursuant to N.H. REV. STAT. § 358-A:10-a.

## COUNT XIX

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. STAT. ANN. § 56-8-19, *et seq.*)

188.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

189.     The New Jersey Consumer Fraud Act ("NJCFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with

the subsequent performance of such person as aforesaid, whether or not any person has in fact

been misled, deceived or damaged thereby…" N.J. STAT. ANN. § 56:8-2.

190.     The Defendants are persons within the meaning of the NJCFA. N.J. STAT. ANN.

§ 56:8-1(d).

191.     In the course of the Defendants' business, they willfully failed to disclose and

actively concealed material facts regarding the contents of their Herbal Supplements.

Accordingly, the Defendants engaged in unlawful trade practices, including advertising the

contents of their Herbal Supplements, with the intent to sell them without the contents they

represented their supplements contain. The Defendants knew or should have known that their

conduct violated the NJCFA.

192.     The Defendants engaged in an unlawful practice under the NJCFA when they

failed to disclose material information concerning the content of their Herbal Supplements. The

Defendants deliberately withheld the information regarding the content of their Herbal

Supplements to induce customers to purchase their Herbal Supplements. Buyers such as

Plaintiffs and members of the Class would have acted differently knowing that the Defendants

were selling Herbal Supplements that did not contain the very ingredients they were represented

to contain. Plaintiffs and members of the Class would have wanted to know, as would any

reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients

they were supposed to contain and this information would have changed their and any reasonable

customer's decision to purchase the Defendants' Herbal Supplements.

193.     The Defendants' unlawful practices caused substantial injury to consumers.

194.     Plaintiffs and the Class suffered ascertainable loss of money or property caused by the Defendants' unlawful practices. Plaintiffs and the Class overpaid for the Herbal Supplements they purchased and did not receive the benefit of their bargain.

195.     Plaintiffs are entitled to recover legal and/or equitable relief, treble damages, and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19.

196.     Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiffs will mail a copy of this First Amended Consolidated Complaint to New Jersey's Attorney General within ten (10) days of filing it with the Court.

## COUNT XX

## VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. STAT. ANN. § 57-12-1, *et seq.*)

197.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

198.     The New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. §§ 57-12-1, *et seq.* ("New Mexico UTPA") makes unlawful any "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M. STAT. ANN. § 57:12-3. Trade or commerce includes the "sale or distribution of any services." N.M. STAT. ANN. § 57-12-2(C).

199.     The Defendants engaged in unfair methods and practices in the conduct of its trade or commerce in violation of the New Mexico UTPA, including the following prohibited conduct: "(11) making false or misleading statements of fact concerning the price of goods or services … or one's own price at a past or future time or the reasons for, existence of or amounts of price reduction" and "(14) using exaggeration, innuendo or ambiguity as to a material fact or

failing to state a material fact if doing so deceives or tends to deceive," and "(15) stating that a transaction involves rights, remedies or obligations that it does not involve."

200.     The Defendants are persons within the meaning of the New Mexico UTPA. N.M. Stat. Ann. § 57:12-2(A).

201.     In the course of the Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the contents of their Herbal Supplements.

202.     The Defendants took advantage of the lack of knowledge, ability, experience, and capacity of Plaintiffs and the Class to a grossly unfair degree. The Defendants' actions resulted in a gross disparity between the value received and the price paid by Plaintiffs and the Class. The Defendants' actions constitute unconscionable actions under § 57-12-2(E) of the New Mexico UTPA.

203.     Plaintiffs and the Class lost money and sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief provided for under § 57-12-10 of the New Mexico UTPA. Because the Defendants' conduct was committed willfully, Plaintiffs and the Class seek treble damages, along with court costs and attorneys' fees.

## COUNT XXI

## VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW
### (N.Y. Gen. Bus. Law § 349)

204.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

205.     The Defendants' business acts and practices alleged herein constitute deceptive acts or practices under the New York General Business Law, Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349 ("NYGBL").

206.     At all relevant times, Plaintiffs and Class members were consumers of the Defendants' Herbal Supplements. The challenged behavior of the Defendants' was consumer-oriented within the meaning of the NYGBL.

207.     The practices of the Defendants, as alleged herein, violated the NYGBL for, *inter alia*, one or more of the following reasons:

a.     The Defendants engaged in deceptive, unfair and unconscionable commercial practices which did, or tended to, mislead Plaintiffs about facts that could not reasonably be known by them;

b.     The Defendants caused Plaintiffs to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

c.     The Defendants failed to reveal material facts to Plaintiffs and the Class members;

d.     The Defendants made material representations and statements of fact to Plaintiffs and the Cass members; and

e.     Under all of the circumstances, the Defendants conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

208.     The Defendants' violations of the NYGBL caused injuries to Plaintiffs and Class members.

010494-11  757585 V1

## COUNT XXII

### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
(N.C. GEN. STAT. § 75-1.1, *et seq.*)

209.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

210.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"  The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA.  N.C. GEN. STAT. § 75-16.

211.    The Defendants' acts and practices complained of herein were performed in the course of its trade or business and thus occurred in or affected "commerce," which includes the Defendants' Herbal Supplements as defined in N.C. GEN. STAT. § 75-1.1(b).

212.    In the course of the Defendants' business, it knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the contents of its Herbal Supplements.

213.    Plaintiffs and members of the Class relied upon the Defendants' false and misleading representations and omissions in deciding whether to purchase the Defendants' Herbal Supplements. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements

- 46 -

failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

214.    The Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

215.    Plaintiffs and the other Class members were injured as a result of the Defendants' conduct in that Plaintiffs and the other Class members overpaid for the Herbal Supplements they purchased and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of the Defendants' misrepresentations and omissions.

216.    Plaintiffs, individually and on behalf of the other Class members, seek treble damages pursuant to N.C. GEN. STAT. § 75-16, and an award of attorneys' fees pursuant to N.C. GEN. STAT. § 75-16.1.

## COUNT XXIII

### VIOLATIONS OF THE NORTH DAKOTA CONSUMER FRAUD ACT
#### (N.D. CENT. CODE § 51-15-01, *et seq.*)

217.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

218.    North Dakota's Consumer Fraud Act, N.D. CENT. CODE §§ 51-15-01, *et seq.* ("NDCFA"), prohibits a person from engaging in "any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." N.D. CENT. CODE § 51-15-02. The Defendants' Herbal Supplements constitutes "merchandise" as defined by the NDCFA.  N.D. CENT. CODE § 51-15-02(3).

219. The NDCFA provides a private right of action against any person who has acquired money or property "by means of any practice declared to be unlawful" by the NDCFA. N.D. CENT. CODE § 51-15-09.

220. In the course of the Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the contents of their Herbal Supplements.

221. Plaintiffs and members of the Class relied upon the Defendants' false and misleading representations and omissions in deciding whether to purchase the Defendants' Herbal Supplements. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

222. The Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

223. Plaintiffs and the other Class members suffered a loss of money or property and were injured as a result of the Defendants' conduct in that Plaintiffs and the other Class members overpaid for the Herbal Supplements they purchased and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of the Defendants' misrepresentations and omissions.

010494-11 757585 V1

224.    The Defendants knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, are liable to Plaintiffs and the Class for treble damages, as well as attorneys' fees, costs, and disbursements.

## COUNT XXIV

### VIOLATIONS OF THE OKLAHOMA CONSUMER PROTECTION ACT
### (OKLA. STAT. TIT. 15 § 751, *et seq.*)

225.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

226.    Oklahoma's Consumer Protection Act, OKLA. STAT. TIT. 15 § 751, *et seq.* ("Oklahoma CPA"), makes it unlawful to commit unfair or deceptive trade practices. A deceptive trade practice "means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral." OKLA. STAT. TIT. 15 § 752(13). An unfair trade practice "means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." OKLA. STAT. TIT. 15 § 752(14).

227.    In the course of the Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the content of their Herbal Supplements.

228.    The Defendants' misrepresentations could reasonably be expected to deceive or mislead a person to their detriment, and actually did deceive Plaintiffs and members of the Class. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as

- 49 -

would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

229.     The Defendants' conduct described above offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers and affect the public interest because Plaintiffs and members of the Class were injured in the same way as thousands of others through the Defendants' generalized course of deception.

230.     The Defendants' conduct proximately caused injuries to Plaintiffs and the Class. Plaintiffs and the other Class members suffered a loss of money or property and were injured as a result of the Defendants' conduct in that Plaintiffs and the other Class members overpaid for the Herbal Supplements they purchased from Defendants and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of the Defendants misrepresentations and omissions.

231.     The Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## COUNT XXV

### VIOLATIONS OF THE OKLAHOMA CONSUMER
### DECEPTIVE TRADE PRACTICES ACT
### (OKLA. STAT. TIT. 78 § 51-55, *et seq.*)

232.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth

233.     Oklahoma's Deceptive Trade Practices Act, OKLA. STAT. TIT. 78 § 51-55, *et seq.* ("Oklahoma DTPA"), makes it unlawful to engage deceptive trade practices in the course of a business, vocation or occupation.  A person commits a deceptive trade practice when, he "11.

Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." OKLA. STAT. TIT. 78 § 53.

234.     In the course of the Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the contents of their Herbal Supplements.

235.     The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute deceptive trade practices under the Oklahoma DTPA.

236.     The Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing the Defendants' Herbal Supplements as a result of the Defendants' generalized course of deception.

237.     Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered actual monetary loss. Plaintiffs overpaid for the Herbal Supplements they purchased from Defendants and did not receive the benefit of their bargain.

238.     Plaintiffs seek an award of actual damages, attorney's fees and costs and permitted by the Oklahoma DTPA.

## COUNT XXVI

## VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### (S.C. CODE ANN. § 39-5-10, *et seq.*)

239.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

240.     The South Carolina Unfair Trade Practices Act ("SCUTP") prohibits "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. CODE ANN. § 39-5-20(a). The Defendants are persons within the meaning of S.C. CODE ANN. § 39-5-10(a).

241.    Trade or commerce as defined by the SCUTP includes "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State." S.C. CODE ANN. § 39-5-10(b). The Defendants' Herbal Supplements at issue in this case are an "article, commodity or thing of value" under the SCUTP and affect the people of South Carolina directly and indirectly.

242.    In the course of the Defendants' business, they knowingly and willfully failed to disclose and actively concealed material facts and made false and misleading statements regarding the content of the Herbal Supplements they sold.

243.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute deceptive trade practices under the SCUTP.

244.    Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered ascertainable monetary loss. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements. Plaintiffs overpaid for the Herbal Supplements they purchased from Defendants and did not receive the benefit of their bargain.

245.    Plaintiffs seek an award of actual damages, treble damages, attorney's fees and costs and permitted by the SCUTP. S.C. CODE ANN. § 39-5-140.

## COUNT XXVII

## VIOLATIONS OF THE SOUTH DAKOTA DECEPTIVE
## TRADE PRACTICES AND CONSUMER PROTECTION ACT
### (S.D. CODE ANN. § 39-5-10, *et seq.*

246.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

247.     The South Dakota Deceptive Trade Practices and Consumer Protection Act ("SDCPA") makes it an unlawful, deceptive act or practice to "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby."  S.D. CODIFIED LAWS § 37-24-6.

248.     The Defendants Herbal Supplements at issue in this case are "merchandise" under the SDCPA. S.D. CODIFIED LAWS § 37-24-1.

249.     In the course of the Defendants' business, they knowingly and intentionally failed to disclose and actively concealed material facts and made false and misleading statements regarding the contents of their Herbal Supplements.

250.     The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute deceptive trade practices under the SDCPA.

251.     Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered ascertainable monetary loss. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal

Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements. Plaintiffs overpaid for the Herbal Supplements they purchased from Defendants and did not receive the benefit of their bargain.

252.    The Plaintiffs seek an award of actual damages, attorney's fees and costs as permitted by the SDCPA. S.C. CODE ANN. § 39-5-140.

## COUNT XXVIIII

### VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT
### (TENN. CODE ANN. § 47-18-101, *et seq.*)

253.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

254.    The Tennessee Consumer Protection Act ("TCPA") makes unlawful to commit unfair or deceptive acts or practices "affecting the conduct of any trade or conduct. TENN. CODE. ANN. § 47-18-104(b). Unfair or deceptive practices under the TCPA include "(9) Advertising goods or services with intent not to sell them as advertised," and "(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." TENN. CODE ANN. § 47-18-104(b).

255.    The Defendants' Herbal Supplements at issue in this case constitute "goods" under the TCPA. TENN. CODE ANN. § 47-18-103(18).

256.    In the course of the Defendants' business, they knowingly, willfully and intentionally failed to disclose and actively concealed material facts and made false and misleading statements regarding the contents of their Herbal Supplements.

257.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute unfair or deceptive trade practices under the TCPA.

258.     Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered ascertainable monetary loss. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements. Plaintiffs overpaid for the Herbal Supplements they purchased from Defendants and did not receive the benefit of their bargain.

259.     Plaintiffs seek an award of actual damages, treble damages, attorney's fees and costs as permitted by the TCPA. TENN. CODE ANN. § 47-18-109.

## COUNT XXIX

### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
(TEX. BUS. & COM. CODE § 17.41, *et seq.*)

260.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

261.     Plaintiffs intend to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA"), which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." TEX. BUS. & COM. CODE § 17.46. Plaintiffs will make a demand in satisfaction of TEX. BUS. & COM. CODE § 17.45(2), and may amend this Complaint to assert claims under the TDTPA once the required 60 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the TDTPA.

## COUNT XXX

### VIOLATIONS OF THE VERMONT CONSUMER FRAUD ACT
### (VT. STAT. ANN. § 2451, *et seq.*)

262.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

263.     The Vermont Consumer Fraud Act ("VCPA") makes unlawful to commit "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." VT. STAT. ANN. § 2453(a). The VCPA provides a private right of action for "[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices … or who sustains damages or injury as a result of any false or fraudulent representations or practices" prohibited by the VCPA. VT. STAT. ANN. § 2461(b).

264.     Plaintiffs are each "consumers" as defined by VT. STAT. ANN. § 2451a(a). The Defendants' Nutritional Supplements are "goods" under VT. STAT. ANN. § 2451a(b).

265.     In the course of the Defendants' business, they knowingly and intentionally failed to disclose and actively concealed material facts and made false and misleading statements regarding the content of the Herbal Supplements they sold.

266.     The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute unfair or deceptive trade practices under the VCPA.

267.     Plaintiffs and the Class relied upon and were deceived by the Defendants' unfair and deceptive misrepresentations of material fact in deciding whether to purchase the Defendants' Herbal Supplements. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal

Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

268.     Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered ascertainable monetary loss. Plaintiffs overpaid for the Herbal Supplements they purchased from Defendants and did not receive the benefit of their bargain.

269.     Plaintiffs seek an award of actual damages, treble damages, attorney's fees and costs as permitted by the VCPA.  VT. STAT. ANN. § 2461(b).

## COUNT XXXI

### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
### (REV. CODE WASH. ANN. § 19.86.010, *et seq.*)

270.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

271.     The Washington Consumer Protection Act ("WCPA") makes unlawful to commit "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." REV. CODE WASH. ANN. § 19.86.020. The WCPA provides a private right of action for "[a]ny person who is injured in his or her business or property" by violations of the Act.  REV. CODE WASH. ANN. 19.86.090.

272.     In the course of the Defendants' business, they knowingly and intentionally failed to disclose and actively concealed material facts and made false and misleading statements regarding the contents of the Herbal Supplements they sold to Plaintiffs and members of the Class.

273.     The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute unfair or deceptive trade practices under the WCPA. The Defendants'

actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing the Defendants' Herbal Supplements as a result of the Defendants' generalized course of deception. The Defendants' conduct has the capacity to, and has actually caused injury not only to Plaintiffs, but to thousands of other the Defendants' Herbal Supplement customers in Washington and around the country.

274.    Plaintiffs and the Class relied upon and were deceived by the Defendants' unfair and deceptive misrepresentations of material fact in deciding to enter into contracts or continue doing business with the Defendants. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very ingredients they were represented to contain. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase the Defendants' Herbal Supplements.

275.    Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered ascertainable monetary loss. Plaintiffs overpaid for the Herbal Supplements they purchased from Defendants and did not receive the benefit of their bargain.

276.    Plaintiffs seek an award of actual damages, treble damages, attorney's fees and costs as permitted by the WCPA. REV. CODE WASH. ANN. § 19.86.090.

277.    Pursuant to WASH. REV. CODE ANN. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

010494-11  757585 V1

## COUNT XXXII

## UNJUST ENRICHMENT

278.     Plaintiffs reallege and incorporate by reference the preceding allegations as if fully set forth above.

279.     Defendant has unjustly retained a benefit to detriment of Plaintiffs and members of the Class. The Defendants sold Herbal Supplements to Plaintiffs and the Class, that failed to contain the ingredients that the Defendants represented such supplements contain. In addition, the supplements purchased by Plaintiffs and the Class contained numerous other ingredients that were not disclosed on the packaging of the supplements. The Defendants continue to possess money paid by Plaintiffs and the Class to which they are not entitled.

280.     The Defendants' retention of the benefit violates the fundamental principles of justice, equity and good conscience. The Defendants did not disclose to Plaintiffs and the Class that many of the Herbal Supplements failed to contain the ingredients they represented such supplements contain, or, contained other materials not disclosed on the packaging of the Herbal Supplements.

281.     As a direct and proximate result of the Defendants' misrepresentations and/or omissions with respect to the content of their Herbal Supplements, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class members request that the Court enter an order or judgment against the Defendants including the following:

010494-11 757585 V1

A.      Declaring that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure, Rule 23, and for an order certifying this case as a class action and appointing Plaintiffs as Class representatives;

B.      Declaring that the Defendants' practice of advertising and selling Herbal Supplements that fail to contain the ingredients advertised, was wrongful and unfair;

C.      Restitution of all purchases of Herbal Supplements by Plaintiffs and the Class, in an amount to be determined at trial;

D.      Disgorgement of the ill-gotten gains derived by the Defendants from their misconduct;

E.      Actual damages in an amount according to proof;

F.      Punitive damages;

G.      Compensatory damages caused by the Defendants' unfair or deceptive practices; along with exemplary damages to Plaintiffs and each Class member for each violation;

H.      A permanent injunction requiring the Defendants to cease selling Herbal Supplements that fail to contain the advertised ingredients;

I.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

J.      An order awarding Plaintiffs and the Class their attorney's fees and costs and expenses incurred in connection with this action; and

M.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

010494-11 757585 V1

DATED: February 6, 2015    Respectfully submitted,


    By: */s/ Steve W. Berman*
    Steve W. Berman
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1918 Eighth Avenue, Suite 3300
    Seattle, Washington 98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594
    E-mail: steve@hbsslaw.com

    Elizabeth A. Fegan
    Daniel J. Kurowski
    Thomas E. Ahlering
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1144 West Lake Street, Suite 400
    Oak Park, Illinois 60301
    Telephone: (708) 628-4949
    Facsimile: (708) 628-4950
    E-mail: beth@hbsslaw.com
      dank@hbsslaw.com
      toma@hbsslaw.com

    Jason Zweig (*pro hac vice* forthcoming)
    HAGENS BERMAN SOBOL SHAPIRO LLP
    555 Fifth Avenue, Suite 1700
    New York, New York 10017
    Telephone: (212) 752-5455
    Facsimile:  (917) 210-3980
    E-mail: jasonz@hbsslaw.com

    J. Barton Goplerud (*pro hac vice* forthcoming)
    HUDSON, MALLANEY, SHINDLER &
    ANDERSON, P.C.
    5015 Grand Ridge Drive, Suite 100
    West Des Moines, Iowa 50265
    Telephone: (515) 223-4567
    Facsimile: (515) 223-8887
    E-mail:  jbgoplerud@hudsonlaw.net

    *Counsel for Plaintiffs*